PETTIGREW, J.
1 gJennifer Boudreaux appeals a district court judgment, which adopted the recommendations of a hearing officer and modified a prior child support order. For the reasons that follow, and under the particular facts and circumstances of this case, we vacate the judgment rendered March 18, 2013, and signed April 14, 2013. We further reinstate the judgment of the district court of May 8, 2012.
FACTS AND PROCEDURAL HISTORY
Joseph E. Boudreaux, II and Jennifer Boudreaux were married on June 13, 1997. Two children were born during their marriage. On January 5, 2011, Mr. Boudreaux filed a Petition for Divorce seeking a divorce under La. C.C. art. 102, and a determination of incidental matters, including child custody and support. A judgment of divorce was rendered on June 10, 2011.
On June 14, 2011, the parties entered into a consent judgment regarding custody, visitation, and child support. With regard to child support, Mr. Boudreaux agreed to pay Ms. Boudreaux child support in the amount of $1,300.00 per month for March, April, May, and June 2011; $1,500.00 per month for July and August 2011; $1,400.00 for September 2011; and $1,300.00 for October 2011. Thereafter, the judgment ordered Mr. Boudreaux to pay child support in the amount of $1,200.00 per month. This judgment also partitioned the community property, and a separate Joint Custody Implementation Plan was also rendered.
On September 6, 2011, Mr. Boudreaux sought a modification in the custody arrangement and a reduction in the child support award. On February 9, 2012, Ms. Boudreaux also filed a motion seeking to change custody, to set child support, for contempt, and other miscellaneous matters. Following extensive discovery concerning the parties’ finances, and a custody evaluation, the district court heard the parties’ requests to modify custody and child support on March 19 and 20, 2012. On May 8, 2012, the district court signed a judgment that modified the joint custody implementation plan, dismissed Ms. Bou- , dreaux’s contempt request, but denied |sMr. Boudreaux’s request to modify the amount of child support. (The judgment ordered Mr. Boudreaux to continue paying Ms. Boudreaux $1,200.00 per month in 'child support, but allowed him to pay 50 percent [$600.00] on the first of every month, and the remaining 50 percent [$600.00] on the fifteenth of every month.)
• On July 24, 2012, Mr. Boudreaux, as the “noncustodial” obligor parent, applied for support enforcement services in what is commonly referred to as the IV-D program (addressed in more detail later herein’), through the Louisiana Department of Children and Family Services (the Department). To receive the Department’s services, Mr. Boudreaux was required to pay the Department’s administrative fees for its services. According to Mr. Boudreaux, the Department’s services allow him, as the' noncustodial obligor parent, to make a direct payment for the monthly amount of his child support obligation, plus any administrative fees, to the Department, which, in turn, would pay the child support to Ms. Boudreaux, the custodial parent. Subsequently, the Terrebonne Parish District. Attorney’s Office, as contract attorney for the Department, filed an ex-parte motion in the district court, allegedly in accordance with LSA-R.S. 46:236.2, to amend the payee of the child support award' from “Jennifer Boudreaux” to the Department. This motion was granted by the district court on August 13, 2012. We note the certificate supporting the motion to amend was false, or at a minimum, *226 materially inaccurate, insofar as it represented that Ms. Boudreaux was receiving benefits from the Department.
On September 5, 2012, Mr. Boudreaux filed a “Motion for Reduction/Termination in Child Support,” seeking a modification of the amount of the child support award due to a “change in marital status.” (Ms. Boudreaux remarried in June 2012.) Service of the motion was made on the District Attorney’s Office, Child Support Enforcement division; Hearing Officer William Dunckelman; and Ms. Bou-dreaux, as the custodial parent. (Because the motion sought a child support modification in a case where allegedly support enforcement services were being provided by the Department, the district court, pursuant to authority granted under Title 46, submitted the matter to a hearing officer to issue recommendations on the motion. See LSA-R.S. 46:236.5 and | ¿Thirty-Second Judicial District Court Rules 14A.1-14A.7.) Further extensive discovery regarding Mr. Boudreaux’s finances ensued.
At the hearing on Mr. Boudreaux’s motion on December 3, 2012, before Hearing Officer Dunckelman with the Office of Child Support (in the IV-D Program), Ms. Boudreaux asserted that the State (through the Department) had no right of action to intercede, contending that the claim was not properly within' the IV-D category of claims over which the hearing officer had jurisdiction. The hearing officer overruled Ms. Boudreaux’s objection. Following a hearing on Mr. Boudreaux’s motion, the hearing officer made a recommendation to the district court to reduce Mr. Boudreaux’s child support obligation from $1,200.00 to $700.00 per month.
Ms. Boudreaux then filed an objection to the hearing officer’s recommendation with the district court, urging that the Department should not be allowed to intervene in the private child support proceedings and further challenging the hearing officer’s recommendation on the merits, urging that remarriage alone does not constitute a substantial change in circumstances for a reduction in child support.
In a judgment rendered March 18, 2013, . and signed on April 4, 2013, the district court accepted the hearing officer’s recommendations.[1]
Ms. Boudreaux has appealed, urging that the Department was not authorized to intervene when it was not providing support enforcement services to her. She also asserts that the district court legally erred by holding that remarriage can be the sole basis to constitute a material change in circumstances for child support recalculation purposes. Further, she asserts that allowing Mr. Boudreaux to apply for services through the Department when he is neither eligible nor delinquent allows him to forum shop in the hope of reaching a more favorable decision.
ISSUE PRESENTED
The ultimate issue presented by Ms. Boudreaux’s appeal is whether the Department is authorized to intervene in a child support case, even when the paying | ¿spouse is not delinquent and the recipient spouse (Ms. Boudreaux) has not applied for services from the Department and receives no public assistance concerning which the legislature has expressed a compelling interest.
DISCUSSION

Ovemew of the Federal IV-D Program and Louisiana’s Statutory Framework

In 1975, in an effort to address the significant problem of nonsupport of chil *227 dren, the United States Congress passed legislation creating the Child Support Enforcement Act. The Act, which was codified as Part D of Title IV of the Social Security Act, is generally referred to as the IV-D program. 42 U.S.C. § 651 et seq. The IV-D program made federal financial support available to the states “[f]or the purpose of enforcing the support obligations owed by absent parents to their children, locating absent parents, establishing paternity, and obtaining child support.” 42 U.S.C. § 651. (Emphasis added.)
The creation of the IV-D program was based on congressional acknowledgment that the problem of welfare dependency— including the steadily rising cost of the Aid to Families With Dependent Children (AFDC) program — was caused, in part, by absent parents who did not pay adequate child support. Quarles v. St. Clair, 711 F.2d 691, 701 (5 Cir.1983). (Emphasis added.) Congress therefore sought to enact legislation that would encourage the collection of these previously unenforced child support obligations by the states. Id.
To comply with the IV-D program, Louisiana enacted child support enforcement legislation, under Title 46, Public Welfare and Assistance, Chapter 3, Public Assistance, Part II, Family Assistance, Subpart B, Child Support Enforcement. See La. R.S. 46:236.1.1 et seq. With regard to amending child support orders, La. R.S. 46:236.2 provides, in pertinent part:
A. (1) The department or district attorney may, by a written motion together with a written certification from the department that support enforcement services are being furnished to the current caretaker of any individual receiving child support benefits, or to the payor of any support benefits for such individual, obtain an order to require any person under an order to support such individual or | (¡caretaker to make such support payments payable to the department.
(Emphasis added.) The above quoted statutory language originally entitled the Department to intervene in a support proceeding if the Department first certified that support enforcement services are being furnished to the individual or caretaker of any individual receiving support benefits. State ex rel. Jones v. Mallett, 98-1051 (La.App. 3 Cir. 2/3/99), 737 So.2d 810, 811-12, writ denied, 99-0639 (La.2/7/99), 747 So.2d 14. Thus, intervention by the Department or the district attorney’s office requires a showing that support enforcement services have actually been provided. The Department’s authority to seek modification of a child support order exists only when either the party or the child is receiving public assistance, or when the obligor has failed to make support payments and the Department is called upon by the custodial parent to assist in enforcing a child support order.
, Mr. Boudreaux argues that the amendment by La. Acts. 1999, No. 762, § 1, which added to the statute the language: “or to the payor of any support benefits” encompasses him, since he paid the administrative fees and applied to the Department to fulfill his obligation to pay Ms. Boudreaux child support. Mr. Boudreaux cites no support for this interpretation of the statute’s amendment, and only notes that the Jones case cited above was decided prior to said amendment. Moreover, we find that Mr. Boudreaux’s suggested interpretation of the statute ignores the meaning of the subsequent language of the amendment that further identifies the pay- or as'one who provides support “for such individual.” The only person that language can reasonably be interpreted as applying to is the “individual receiving support benefits ” from the Department. Otherwise, as would be the result if we *228 accepted Mr. Boudreaux’s argument, a party disgruntled with a support judgment rendered by a district court could simply, unilaterally apply to submit that support through the Department, and attempt then to circumvent the effect of a trial court’s judgment by seeking a modification of the support obligation through the Depart-' ment, leaving the payee of said support obligation without a “voice” in that proceeding. Such interpi'etation and | application of the amended statute flies in the face of the constitutional rights of the payee. Therefore, we And no merit to, and reject Mr. Boudreaux’s argument.
Accordingly, applying the statute to the facts and circumstances of this matter, the evidence in the record before us established that neither of those requirements exists under the facts and circumstances of this case. Despite the certification by the district attorney’s office to the contrary, neither Ms. Boudreaux nor her children are receiving public assistance; Mr. Boudreaux has not failed to make support payments; nor has Ms. Boudreaux sought the enforcement of those payments through the Department. Mere certification is insufficient. Even where a written certification exists, failure to establish that certification as correct in subsequent proceedings defeats the right of the Department to intervene. Barnes v. Barries, 07-0027 (La.App. 3 Cir. 5/2/07), 957 So.2d 251, 255. Because the Department cannot properly certify that it has furnished services to Ms. Boudreaux in accordance with La. R.S. 46:236.2, the Department has no legitimate interest in intervening in this action to amend an order of support so that payments are made through the state.
We also note that it is Mr. Boudreaux, as the obligor of the child support obligation, who has called upon the Department to intervene. We further note significantly that he only did so when his motion to decrease his child support obligation was denied on the merits by the district court. Not only does this render Mr. Bou-dreaux’s timing and motive disingenuous, it is also contrary to both the purpose of the IV-D program and the statutory language. To interpret the statutory language any other way (as Mr. Boudreaux argues) would allow him to assign the rights of the payee (Ms. Boudreaux) to the Department. This would essentially amount to an illegal taking, and a violation of the payee’s constitutional due process rights.
Mr. Boudreaux argues that the plain language of La. R.S. 46:236.1.2B(1) allowed him, as a noncustodial parent, to apply for the Department’s services, despite his not receiving public assistance or being delinquent in his child support payments. That statute provides as follows:
| sIn addition, as required by federal law, the department shall provide the above services to any individual including absent or noncustodial parents not otherwise eligible for such services as provided for in Subsection A upon receiving an application from such individual and upon receiving any fee which may be assessed by the department for the services, regardless of whether the individual has ever received public assistance and regardless of whether there is a delinquency.
(Emphasis added.) However, this has to be read in conjunction with the federal law insofar as the statute includes the phrase “as required by federal law,” and also, it must be interpreted in pari materia with all of the provisions under La. R.S. 46:236.1.1 et seq. Laws on the same subject matter must be interpreted in reference to each other. La. C.C. art. 13. If the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms *229 to the purpose of the law. La. C:C. art. 10. When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. La. C.C. art. 12.
Applying these general precepts of statutory language interpretation, we find that the meaning of the word “individual” as used in La. R.S. 46:236.1.2B(1) refers to the payee of the child support and “absent or noncustodial parents.” “Noncustodial parent” means an absent parent, as -defined in subparagraph (b) of La. R.S. 46:236.1.1. La. R.S. 46:236.1.1(9)(a). Sub-paragraph (b) provides:
“Absent parent” means any person who does not reside with his dependent child and who is responsible for providing financial support for that child and against whom the child support enforcement section of the department is enforcing or seeking to enforce or modify a support obligation pursuant to a plan described in Title IV-D of the Social Security Act and made applicable to the state under this Subpart. An “absent parent” may include but is not limited to the natural parent, adoptive parent, and the putative or alleged father. This definition shall apply retroactively to all cases that the child support enforcement section of the department is enforcing or seeking to enforce or modify.
(Emphasis added.) Mr. Boudreaux does not fit the definition of a noncustodial parent or absent parent because he has shared custody of his children. Moreover, the Department is not seeking to enforce anything against him. Indeed, it was he who | flsought out the Department to assist him in reducing his child support obligation when he failed to prevail in his efforts to do so via the district court. To allow Mr. Boudreaux to avail himself of the Department’s services under this “misnomer” as applied to him would not only be contrary to the clear purpose of the statute, but under these circumstances, it would allow forum shopping, which under any circumstances, is prohibited by law.
Even assuming, for the sake of argument only, that Mr. Boudreaux qualifies as a “noncustodial parent,” such parent may seek the Department’s assistance to modify the child support order, but only with respect to support being enforced under the IV-D program.
Finally, we reiterate that the result reached in this case is based solely on the particular facts and circumstances of this case. It is by no means intended to serve as a way to exclude certain categories of applicants to the IV-D program when to do so would not be in the best interests of the child(ren) involved.
CONCLUSION
For all of the foregoing reasons, we find, first, that the district court erred in signing the ex parte order amending the child support judgment of May 8, 2012, by changing the payee from Ms. Boudreaux to the Department. Secondly, Ms. Bou-dreaux’s exception raising the objection of no right of action should have been, and is hereby, sustained. Finally, for all of the same reasons, the district court’s judgment rendered March 18, 2013, and signed April 14, 2013, adopting the hearing officer’s recommendations is hereby vacated. Further, the district court’s judgment of May 8, 2012, is reinstated. Costs of this appeal are assessed to Joseph E. Boudreaux, II.'
EXCEPTION RAISING THE OBJECTION OF NO RIGHT OF ACTION SUSTAINED; JUDGMENT RENDERED MARCH 18, 2013, AND SIGNED APRIL 14, 2013, IS VACATED. JUDGMENT OF MAY 8, 2012, REINSTATED.
*230 McCLENDON, J., dissents and assigns reasons.
GUIDRY, J., dissents.

. The hearing officer's recommendations and the district court's judgment adopting the recommendations are contained in the same document.